IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DeShawn Collins (B-71295), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 5083 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| Michael Magana and Maurice Lake, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff DeShawn Collins, a prisoner confined at Stateville Correctional Center and proceeding *pro se*, brought this 42 U.S.C. § 1983 action concerning excessively cold temperatures in his area of the prison during January of 2014. Named as defendants are former Warden Michael Magana and Major Maurice Lake. The defendants' motion for summary judgment is currently before the Court. Because there are material disputes of fact concerning the plaintiff's claim, the defendants' motion is denied.

# BACKGROUND[1]

Plaintiff Collins is confined at the Stateville Correctional Center ("Stateville"). In January 2014, he was housed in C-House, cell 457. At that time, Major Maurice Lake was assigned to Bravo ("B") and Charlie ("C") Houses, and Michael Magana was the warden of Stateville. Though Collins contends he was exposed to excessively cold cell temperatures the entire winter of 2013-14, his complaint focuses particularly on the period of January 6-28, 2014. Cmplt. ¶ 6. During the winter of 2013-14, much of the country experienced a "polar vortex," during which outside temperatures in Illinois in January dropped well below zero degrees Fahrenheit and rarely rose above freezing. (Pl. SOF ¶¶ 6, 10, citing Dkt. 51, Exh. B, Farmer's Almanac Weather Reports for zip code 60434).

According to Major Lake, the heating system in C House during that time, though not broken, was "unable to maintain and, as a result, the temperature was slightly colder in the cell house." Defs. SOF ¶ 13. Collins disputes the characterization of the temperature inside. He does not know the exact temperatures in his cell house and cell, but he could see his breath and often shivered uncontrollably for hours. Pl. SOF ¶¶ 18, 21. Some of the windows in C House ("many," according to Collins), which are located about ten feet away from the inmates' cells, were cracked, broken, or missing during this period.

---

[1] The facts are taken from the parties' N.D. Ill. Local Rule 56.1 Statements of Material Facts ("SOF"). Courts may decide a summary judgment motion based on a factual record established by the parties' Rule 56.1 Statements. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). The parties complied with Local Rule 56.1, as both defendants and the plaintiff submitted SOFs (Dkt. 48 (Defs. SOF) and 51 (Pl.'s SOF follows his responses to Defs.' SOF)), and responded to each other's SOFs. Dkt. 51 and 54. To the extent a party failed to respond adequately to a properly submitted factual statement, the Court may consider the statement admitted. *See* Local Rule 56. 1(b)(3)(C); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012).

More than 29 Stateville inmates complained of cold temperatures during the winter of 2013-14. (Pl. SOF ¶ 12, citing Dkt. 51, Exh. E). Collins includes declarations from four inmates stating (among other things) that they filed grievances about cold temperatures during that winter. Responses to several grievances (though not necessarily to the inmates whose declarations are included in Collins' submission) stated that the heater in C House had been fixed. There is no other evidence of record indicating whether, or when, the heater was ever repaired or replaced.

As an inmate at Stateville, but not specifically as a result of cold temperatures, Plaintiff was issued the following clothing: two pairs of pants, two shirts, two t-shirts, boxer shorts, socks, a coat, two sheets and a blanket. In January of 2014, Collins reports that he wore long johns, sweat pants, a skull cap, and two or three pairs of socks. He wore his jacket only when going to sleep. Plaintiff was generally able to purchase long johns, sweat pants, sweatshirts, and blankets from the prison's commissary, though not necessarily in January of 2014 because of lockdowns. Plaintiff's cell house was on lockdown for at least seven days and possibly as many as fourteen days during January of 2014, specifically because of the cold temperatures.

Lake contends that a warden's bulletin was issued directing officers to provide additional coats and blankets to inmates. Collins correctly notes, however, that other than Lake's answer to an interrogatory, the defendants produced no evidence that such a bulletin was issued. Collins also maintains that, even if there was such a directive from the warden, it was not carried out for him. Collins states that, in response to his requests for more clothing and an additional blanket, Gallery Officer Borgers stated that there were none.

Collins filed an emergency grievance on January 28, 2014, stating that C House had broken or missing windows, that outside temperatures were below zero for much of January, and that he was exposed to extremely cold temperatures. Dates on the grievance indicate Magana received it on February 18, 2014, and denied it as not an emergency on February 19, 2014. In addition, Collins wrote two letters to Lake on January 9 and 20, 2014 about cold temperatures and cracked or broken windows. He used the prison internal mailing system to send the letters to Lake, but the evidence does not clearly establish whether Lake received them. Collins neither spoke to nor wrote letters to Warden Magana. However, Warden Magana and a major for C House (the evidence cited does not state the identity of the major) visited C House and were told by inmates about freezing temperatures and broken windows in that unit.

Collins was never treated in the healthcare unit for a condition resulting from exposure to cold temperatures; however, he requested medical attention on January 22 and 24, 2014 for anemia. (Pl. Resp. ¶ 25; *see also* Dkt. 51, Exh. D, Plaintiff's 1/22 and 1/24/14 medical request slips). Both requests stated that he has a low white blood cell count, that his exposure to extremely cold temperatures posed a risk of harm to his health, and that he needed an extra blanket. Collins never saw a physician, however, and so cannot offer evidence about whether his condition was exacerbated by the cold weather. Collins contends that he regularly informed the medical technician when she delivered medications to Plaintiff about his condition and his need to see a doctor. The medical technician told Plaintiff a visit with the doctor was unnecessary.

**DISCUSSION**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Id.*. The Court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The Court may not weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *see also Tolan*, 13 S. Ct. at 1866.

A party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that he is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 4s51, 460 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the non-moving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical

5

care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Assessing a claimed violation of this constitutional right involves a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*

The right to humane conditions includes "a right to be free from extreme hot and cold temperatures." *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir.1986); *Gillis v. Litscher*, 468 F.3d 488, 494 (7th Cir.2006). When addressing whether cold cell temperatures were sufficiently serious "courts should examine several factors . . ., such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997); *see also Moore v. Monahan*, No. 06 C 6088, 2009 WL 310963, at *6 (N.D. Ill. Feb. 9, 2009). "Cold temperatures need not imminently threaten inmates' health to violate the Eighth Amendment." *Dixon*, 114 F.3d at 644, citing *Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994). Prisoners have a constitutional right "'not to be confined in a cell at so low a temperature as to cause severe discomfort [.]'" *Dixon*, 114 F.3d at

644, quoting *Del Raine* 32 F.3d at 1034 ; *see also Henderson v. DeRobertis*, 940 F.2d 1055, 1060 (7th Cir. 1991); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

In the instant case, issues of disputed fact exist as to whether Plaintiff's cell temperatures in January of 2014 were cold enough to support a constitutional claim; whether Plaintiff had adequate means to keep warm; and whether the Defendants were aware of Plaintiff's exposure to excessively cold temperatures but failed to take reasonable steps to address the situation.

To begin, it is or should be undisputed that outside temperatures in January of 2014 were bitterly cold. The Farmer's Almanac reports included with Plaintiff's SOF show this and, though the defendants object to Plaintiff's use of the term "polar vortex," that was a term commonly used to describe and explain the unusually cold temperatures during the 2013-14 winter. According to Collins, as well as the declaration of at least one other inmate and a counselor's grievance response, many windows in C House were broken or cracked, thus allowing cold air in. Collins (and other inmates in his area) wore several layers of clothes and a cap in an effort to keep warm. Collins testified that he often could see his breath and stated that he shook uncontrollably for hours, making it difficult for him to breathe. The affidavits of other inmates attest that they were unable to carry out their normal routines and work assignments due to the cold temperatures inside the unit.

Although acknowledging that the heater in C-House was "unable to maintain"—drawing all reasonable inferences in Collins' favor, the Court construes this to mean that the heater was unable to maintain normal, *i.e.,* adequate, temperatures—Lake maintains that temperatures were only "slightly" colder than normal inside C-House. That, however, begs the question of what normal temperatures inside the unit were and how much lower they were as a result of the malfunctioning

7

heater. One might have expected the defendants to present evidence of the actual temperatures inside C-House during this period, given the unusually cold weather, the malfunctioning heater, and the cracked and broken windows—but they did not. The defendants submitted no reports of temperature readings from inside C House in January of 2014. Nor are there affidavits, declarations, or other evidence from Stateville engineers or maintenance persons about temperatures and conditions in Plaintiff's prison area. Consequently, there is a disputed issue of material fact as to whether Plaintiff's cell temperatures were "so low . . . as to cause severe discomfort [.]" *Dixon*, 114 F.3d at 644, quoting *Del Raine* 32 F.3d at 1034. (Moreover, the fact that the defendants apparently did not monitor the temperatures inside the unit during this period, despite knowing that the heater was inadequate and that there were a number of broken and cracked windows, supports an inference of deliberate indifference to the conditions the inmates experienced.)

A disputed issue of material fact also exists as to whether Plaintiff had adequate means to keep warm. Plaintiff testified that he was forced to wear long johns, sweatpants, several pairs of socks, and a skull cap during the days in an unsuccessful effort to keep warm. Although additional clothing may have been available for purchase at the commissary, Plaintiff's area of the prison was on lockdown for much of January, so the viability of that option is open to dispute. Defendants contend that the fact that Plaintiff wore a jacket only at night when sleeping demonstrates he had sufficient clothing to keep warm. However, the fact that he used one item of clothing only at night does not establish Plaintiff had sufficient materials to weather the cold, particularly considering he asked for, but was unable to obtain, more clothing and an additional blanket. There is no indication that wearing a jacket over all the other clothing Plaintiff wore would have sufficed. *See, e.g., Dixon*,

114 F.3d at 644 ("We are dubious of defendants' insistence that a single blanket is sufficient to combat such cold persisting for weeks on end"). Whether the clothing and other materials Plaintiff had in his cell sufficed cannot be determined on the current record.

As to the second prong of Plaintiff's deliberate indifference claim, he must be able to prove that the defendants were actually aware of the condition but disregarded it by failing to take adequate steps to address it. Viewing the current record in a light most favorable to Plaintiff, there is evidence demonstrating that both defendants were aware of the conditions in C House in January of 2014. In addition to filing an emergency grievance, Collins wrote two letters to Major Lake that month, both of which complained of excessively low cell temperatures and the fact that Collins was more vulnerable to the cold given his anemia. Although the defendants contend that Collins has no evidence that Lake received or read the letters, there is no dispute Plaintiff sent them through the prison's internal mailing system and there is no reason to believe Lake did not receive them; Major Lake does not adduce evidence or argue, for example, that other staff members screened or reviewed correspondence that had been addressed to him. Additionally, the declarations of several inmates state that both Warden Magana and a major (presumably Lake who was assigned to B and C Houses, it is fair to infer) visited C House in January of 2014 and saw broken and cracked windows. The defendants also do not dispute that Warden Magana issued a directive to provide inmates with extra blankets and jackets; the existence of that directive is further evidence that the defendants knew that conditions in the unit required remedial measures to assure adequate warmth.

The warden's directive, however, does not suffice to show, as a matter of law, that the defendants were not deliberately indifferent to the inmate's exposure to the cold temperatures inside

C-House. Collins contends that the additional supplies were never provided, and the issuance of a bulletin to provide non-existent materials can hardly be considered reasonable action addressing inmates' extended exposure to excessively cold cell temperatures. The defendants present no evidence (affidavits, declarations, maintenance reports, or other materials) as to the conditions of the windows in C House or what steps were taken to repair the windows or the heater during that winter. Consequently, disputed issues of fact exist as to whether Lake and Magana were aware of Plaintiff's excessively cold cell temperatures, knew of his particular vulnerability to them, and took reasonable steps addressing the situation.

In sum, viewing the evidence in a light most favorable to Plaintiff, the current record shows the following: In January of 2014, Illinois experienced bitterly cold temperatures. A number of windows in C House were either broken or cracked, thus allowing cold air in. The heater for C House was "unable to maintain" adequate warmth inside the unit. Inside temperatures were so cold that inmates could see their breath. With the exception of his coat, Plaintiff wore all of the clothing issued to him, as well as long johns and a skull cap he obtained at the commissary or elsewhere. Plaintiff is anemic and thus more vulnerable to cold temperatures. He sent two letters to Lake about cold temperatures and his anemia. Both Lake and Magana viewed the conditions in C House in January of 2014. Neither Defendant took actions to remedy the situation in C House or provide inmates with additional means to weather the cold (except possibly a bulletin to provide apparently non-existent extra blankets and coats). Given such evidence, there are disputed issues of facts as to whether Plaintiff was exposed to excessively cold cell temperatures for a month with insufficient

means to keep warm and whether Defendants were aware of the conditions but failed to take reasonable steps to address them.

The defendants also argue that they are entitled to qualified immunity. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (citation omitted). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.*, citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gruenberg*, 697 F.3d at 578, quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010).

The defendants contend that Collins has no evidence establishing that the cold temperatures he endured in January of 2014 were serious enough to implicate constitutional concerns or that either defendant was aware of the condition. As discussed above, however, the record is unclear as to the severity of the conditions and Defendants' knowledge of them. Where the facts on which a qualified immunity assessment rests are disputed, the availability of the defense cannot be determined on summary judgment. Also, contrary to the defendants' contention that a ruling against them "would require the announcement of new law for which they would have been unaware," (Dkt. 47 at 7), the cases cited above demonstrate that the law defining a prisoner's right not to be subjected to excessively cold temperatures for extended periods of time and officials' need to take

reasonable action was clearly established in January of 2014. *See, e.g., Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997); *Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994); *Henderson v. DeRobertis*, 940 F.2d 1055, 1060 (7th Cir. 1991). Accordingly, a determination as to the validity of the defendants' qualified immunity defense must await trial.

## CONCLUSION

For the reasons stated above, the Court denies the defendants' motion for summary judgment.

DATE: December 1, 2015

John J. Tharp, Jr.
United States District Judge